STATE OF MISSOURI, Defendant in Error, v. SAMUEL DEWITT, Plaintiff in Error.

*Crimes—Larceny.*—The defendant was indicted for feloniously stealing cattle which had been levied upon by the sheriff by virtue of an execution against the defendant and committed to the custody of a third party for safe keeping. *Held,* that the State was bound to show affirmatively that the defendant knew of the execution and seizure of the cattle by the sheriff, so as to show a felonious intent in the taking.

*Error to Linn Circuit Court.*

*G. T. White,* for plaintiff in error.

State v. Dewitt.

I. The defendant was not present when the verdict was returned. The record should affirmatively show that he was present. No person indicted for a felony can be tried unless he be personally present during the trial. (R. C. 1855, p. 1191; Pr. Cr. Cases, art. 6, § 16.) So it is at common law; the verdict in all cases of felony and treason must be delivered in open court, in the presence of the defendant. (1 Arch. C. P. 173, *n.* 2; 1 Chit. C. L. 636; State v. Matthews, 20 Mo. 56; State v. Buckner, 25 Mo. 172, and cases there cited; State v. Cross, 27 Mo. 332.)

II. In this case the defendant was the owner of the property alleged to have been stolen; and if there was a valid execution and levy, the sheriff acquired thereby, at most, but a special property in the cattle. The proof, therefore, of the issuing and delivery to the officers of such a writ upon a judgment against the defendant, and of the levy and removal of the property from defendant's possession in virtue thereof, were indispensable in order to give even the color of criminality to any participation of the accused in taking the property. The case is one, then, that calls strongly for the application of the rule respecting the distinction between primary and secondary evidence, and as it is applied in the authorities before referred to.

For these reasons, all the instructions given for the State on the hypothesis of a judgment and execution against the defendant, and the levy upon his property, were manifestly wrong, and the counter-instructions asked by the defendant should have been given.

III. One of the counts in the indictment alleges the cattle to be the *property* of Quick. If they were taken at all, they were taken while in his possession. But it is submitted that, as according to the testimony they were merely placed in his possession by the officers for safe keeping, he had no such special property in them as to support an indictment, and that larceny cannot be laid of the goods as his property. (Corn v. Morse, 14 Mass. 217; Whart. Cr. Law, 2d ed., 569; Norton v. The People, 8 Cowen, 137.)

The third instruction was, therefore, wrong. There is no pretence whatever that the property belonged, in the language of the instructions, to Quick. Sustaining such a relation to the sheriff in the matter, and his (Quick's) possession being the possession of the officer, it is further submitted that the accused could not be convicted of larceny in resuming, if he did so, the possession of his own property before the sale under the execution. It may be admitted that where goods are taken by a sheriff under a *fieri facias*, he acquires such a special property as would support an indictment for the larceny against any other than the *owner* (the execution debtor), but not against the original owner himself. For, though the goods are in *custodia legis*, the original owner continues to have a property in them until they are sold. The court will observe that the cattle were taken, if at all, by defendant before sale. And if he pays the debt, he is entitled to have them returned, and his debt to the plaintiff in the suit continues until the goods seized are applied to its liquidation, and the sheriff is accountable to the original owner for the goods so seized. (2 Russ. Cr. 91.)

IV. It appearing that defendant was not a principal in the alleged taking, the indictment and all the proceedings thereon are wrong, and the defendant should now be discharged; for if a new trial were ordered, he could not be convicted on this indictment, the evidence having disclosed the fact that he did not commit the larceny (if a larceny was committed), but he was, at most, an accessary before and after the fact. (1 Chit. 256; Barb. Cr. Law, 170–187; 3 Greenl. Ev. § 155; Rosc. on Ev. 506; 10 Wend. 165; 8 Cowen, 151; 14 Mass. 216; Yelv. Rep. 344–5.)

*Welch*, attorney general, for the State.

I. The court did not err in overruling the motion for a new trial. The instructions given by the court, though unnecessarily voluminous, present the case fairly to the jury, and this court will not reverse unless manifest injustice has been done defendant, or the jury misled.

The property was correctly laid in T. M. Rooker, the sheriff, and the act of defendant in taking his own property after it had been levied upon and taken into possession by the sheriff, was larceny. The sheriff has such a title to the property that it will be larceny in the execution defendant to take such property from the possession of the sheriff with intent to charge another with the value of it. (Palmer v. People, 10 Wend. 165.)

This is not one of those cases in which the defendant can set up a claim of property to reduce the offence from a felony to a trespass, since the levy of the execution and the taking the property into possession carried enough of title with it to make the retaking of it by defendant a larceny.

II. It was not necessary for the State to prove by record evidence the regular appointment of Rooker as sheriff. Proof of having acted in that capacity is sufficient. (1 Greenl. Ev. 98 & 108; Rosc. Cr. Ev. 16 & 7; Rex v. Verelet, 3 Camp. 432; Fowler v. Bebee, 9 Mass. 231.)

Nor was the State bound to show that the execution was valid; it having emanated from the proper office, was *prima facie* evidence, at least, of its validity, and sufficient to authorize the sheriff to execute it. Its validity could not be passed upon in this collateral proceeding. The evidence shows the execution to have issued from the clerk's office in the case of Harris v. Dewitt. This *prima facie* evidence, which raised the legal presumption of validity, might have been rebutted by the defendant, but he did not attempt it. Nor was it necessary to show that the property levied upon was subject to execution. The statute prescribes the remedy where property exempt from execution is levied upon by an officer, but the defendant did not set up such claim in the manner pointed out by law; nor did the defendant, on the trial of this cause, introduce any evidence of any kind to show that the property levied on by Rooker was exempt from execution. The proof of this fact must come from the defendant.

III. Nor was the sheriff bound to notify the defendant of

State v. Dewitt.

the levy at the time he made it. The law does not require the sheriff to give any notice of levy, and none being required, none can be demanded, and no advantage can be taken of a want of such notice. Had the sheriff given notice, it would not have been of any virtue, since it would have been doing what the law did not authorize or require. It would not have been an official act.

BAY, Judge, delivered the opinion of the court.

Defendant was indicted in the Linn Circuit Court for feloniously stealing, taking and carrying away two steers, alleged in one count to be the property of one T. W. Rooker; in another count, the property of P. W. Banning; and in a third count, the property of one J. E. Quick.

To this indictment the defendant filed a plea of not guilty, and at the May term, 1862, was tried and convicted, and his punishment assessed at two years' imprisonment in the penitentiary.

It appears from the evidence, as preserved in the bill of exceptions, that one Harris had obtained in said court a judgment for about one hundred and ninety dollars against said Dewitt, upon which an execution was issued directed to the sheriff of said county. This execution was placed into the hands of Banning, a deputy sheriff, about the 16th of August, 1860, and he levied it upon the cattle, the subject of the larceny, on the 6th or 7th of September following, as the property of said Dewitt, and placed said cattle in the custody of said Quick for safe keeping. Quick placed them in his pasture, where they remained about two weeks. They were taken from this pasture in the night-time, and there was proof tending to show that Dewitt was implicated in the taking.

Twenty-six instructions were asked and eighteen given—enough to have utterly confounded any jury of ordinary intelligence. This practice of giving a multiplicity of instructions in cases involving but one or two simple propositions of law, cannot be too strongly condemned. Instead of aiding

the jury in their investigation, its only tendency is to confuse and embarrass them.

In the view taken of this case, it is unnecessary to pass upon those instructions, for upon a careful examination of the evidence we are of the opinion that it does not support the finding of the jury. At the time of the levy of the execution, the cattle belonged to the defendant, who afterwards found them in the pasture of Quick, and no evidence was given to show that defendant had any knowledge whatever as to the character of Quick's possession. It was not shown upon the trial that defendant was present when the levy was made, or knew that the cattle had been seized by the sheriff by authority of an execution issued against him. No knowledge of the existence of any execution against him was shown. The State should have shown such knowledge affirmatively, for without it it is impossible to fix upon the defendant a criminal or felonious intent.

Judgment reversed and case remanded for new trial; the other judges concurring.